

O

# UNITED  STATES  DISTRICT  COURT

## FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| KURT SOLLBERGER, | CASE NO. SACV 09-0766 AG (ANx) |
| Plaintiff, | |
| v. | **ORDER (1) DENYING IN MOTION TO AMEND, (2) GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND PLAINTIFF'S NEGLIGENCE CLAIM, BUT WITHOUT LEAVE TO AMEND ALL OTHER CLAIMS, AND (3) DISMISSING CASE** |
| WACHOVIA SECURITIES, LLC, et al., | |
| Defendants. | |

This case involves an alleged Ponzi scheme.  Plaintiff Kurt Sollberger ("Plaintiff") filed a Complaint, and the Court granted motions to dismiss filed by multiple Defendants, finding that Plaintiff failed to state valid claims.  (Doc. 74.)  The Court identified the shortcomings in the Complaint, and gave Plaintiff a chance to amend his pleading.

Plaintiff filed a First Amended Complaint ("FAC").  Multiple Defendants, including Wachovia Securities, LLC, et al. ("Wachovia"), Morgan Keegan & Company, Inc. ("Morgan Keegan"), and Janney Montgomery Scott, LLC ("JMS" or "Janney") filed three more Motions to Dismiss ("Defendants' Motions"), which are the subject of this Order.

Before the Court could rule on Defendants' Motions, Plaintiff filed a "Motion for Leave

1  to File Proposed Second Amended Complaint" ("Plaintiff's Motion").  Plaintiff's Motion asks
2  the Court to accept a Second Amended Complaint ("SAC"), but the SAC has no federal claims,
3  which would deprive the Court of subject matter jurisdiction over this case.
4  Many Defendants oppose Plaintiff's Motion.  They argue that the FAC fails to correct the
5  original Complaint's deficiencies.  They further argue that leave to file the proposed SAC should
6  not be granted because (1) it was filed after the deadline to amend a pleading in the Court's
7  scheduling order, and (2) it would be futile both because it fails to state a claim and because it
8  removes the Court's jurisdiction.  The Court DENIES Plaintiff's Motion, GRANTS Defendants'
9  Motions with leave to amend the negligence claim but without leave to amend any other claim,
10  and DISMISSES this case for lack of jurisdiction.

11
12  **BACKGROUND**
13
14  The facts in this Section are taken from Plaintiff's Complaint.  As it must for these
15  Motions, the Court assumes factual allegations to be true.
16  This case is based on a "fraudulent investment Ponzi scheme known as the 90% Loan
17  Program, also known as the ESOP-QRP Loan program[.]"  (FAC ¶ 1.)  The scheme was run by
18  an entity known as Optech Limited ("Optech"), which was controlled by another entity called
19  Derivium Capital, LLC ("Derivium").  Plaintiff was a victim of this scheme, and he was advised
20  by Defendant SCS Management, Inc., which has not filed a motion to dismiss.  (FAC ¶¶ 78-79.)
21  Some details of this scheme are described in the Court's Order dismissing Plaintiff's original
22  Complaint, and these details need not be reproduced here.  (*See* Doc. 74 at 2-3.)
23  Plaintiff asserts claims numbered as follows: (1) breach of contract; (2) breach of
24  fiduciary duty; (3) aiding and abetting breach of fiduciary duty; (4) negligence; (5) fraud and
25  conspiracy to commit fraud; (6) aiding and abetting fraud; (7) violation of the Securities Act (8)
26  violation of California Corporate Code § 25504; (9) conversion.  Defendants now seek to
27  dismiss the FAC.  Plaintiff seeks leave to file a proposed Second Amended Complaint, which
28

1  would eliminate certain claims, change certain allegations, remove the Court's basis for subject

2  matter jurisdiction, and cut the pleading's size from 135 pages to 38 pages.

3

4  **ANALYSIS**

5

6  **1.      PLAINTIFF'S MOTION**

7

8          Plaintiff seeks leave to amend his complaint under Federal Rule of Civil Procedure 15(a).

9  But the Court issued a scheduling order on January 11, 2010 that said, "[a]bsent exceptional

10  circumstances, any motion to join another party or to amend a pleading shall be filed and served

11  within 60 days of the date of this Order."  (Doc. 53.)  Plaintiff's Motion was not filed within 60

12  days of the January 11 Order.

13          A party attempting to amend a pleading after the date specified in a scheduling order must

14  first satisfy the "good cause" standard of Federal Rule of Civil Procedure 16(b).  *See Coleman v.*

15  *Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*,

16  975 F.2d 604, 608 (9th Cir. 1992) (finding the "extraordinary circumstances" scheduling order

17  standard as rigorous as the "good cause" standard under 16(b)).  "Unlike Rule 15(a)'s liberal

18  amendment policy which focuses on the bad faith of the party seeking to interpose an

19  amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard

20  primarily considers the diligence of the party seeking the amendment."  *Johnson*, 975 F.2d at

21  609.

22          When evaluating whether a party was diligent, the Ninth Circuit has determined that "the

23  focus of the inquiry is upon the moving party's reasons for modification.  If that party was not

24  diligent, the inquiry should end."  *Id.* at 610.  A finding of "carelessness is not compatible with a

25  finding of diligence and offers no reason for a grant of relief."  *Id.* at 609. Only after the moving

26  party proves that it was diligent in seeking an amendment should a court apply the standard

27  under Rule 15 to determine if the amendment is proper.  *Id.* at 608.

28

1   Here, Plaintiff does not even address the standard of Rule 16(b) or the "extraordinary

2   circumstances" standard set forth in the Court's scheduling order.  The Court finds that Plaintiff

3   has not established good cause for leave to amend or extraordinary circumstances.

4   Moreover, the proposed SAC would strip the Court of subject matter jurisdiction over this

5   case, which is apparently Plaintiff's goal.  Indeed, Plaintiff does not even make any

6   jurisdictional allegations in the SAC under the heading "Jurisdiction, Venue and Parties."  (*See*

7   SAC ¶¶ 6-12.) And further, many of the claims in the SAC, Plaintiff's third attempt at pleading,

8   still would fail to survive a motion to dismiss.

9   Before concluding on Plaintiff's Motion, the Court notes that Plaintiff's claim for

10   negligence in the FAC is dismissed *with* leave to amend, as is discussed in detail in Section 3.

11   Further, Plaintiff's proposed SAC removes any basis for federal jurisdiction, and Plaintiff has

12   stated that he wishes to pursue this case in state court rather than federal court.

13   Plaintiff's Motion is DENIED.

14

15   **2.     DEFENDANTS' MOTIONS**

16

17   Defendants argue that the FAC should be dismissed for multiple reasons.  The Court

18   agrees.

19   A court should dismiss a complaint when its allegations fail to state a claim upon which

20   relief can be granted. Fed. R. Civ. P. 12(b)(6).  A complaint need only include "a short and plain

21   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

22   "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

23   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  The Court must accept

24   as true all factual allegations in the complaint and must draw all reasonable inferences from

25   those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands*

26   *Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

27   But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim

28   that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A

4

1   claim has facial plausibility when the pleaded factual content allows the court to draw the

2   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

3   1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a

4   cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940,

5   or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

6   inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal

7   without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the

8   complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th

9   Cir. 2003).

10

11       **2.1    Plausibility and Particularity**

12

13       Rule 8(a) requires sufficient facts supporting a plausible claim. Rule 9(b), which governs

14   cases that sound in fraud, requires particularity. The concepts are somewhat related, but the

15   FAC is neither sufficiently specific in any of its claims nor sufficiently particular in its fraud-

16   based claims.

17       Concerning specificity, the Ninth Circuit has explained that, "to survive a motion to

18   dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must

19   be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572

20   F.3d 962, 969 (9th Cir. 2009). Such factual content is absent here.

21       Plaintiff's FAC alleges that Defendants are co-conspirators in a scheme to defraud

22   Plaintiff, so that Defendants may "receive huge fees . . . for themselves." (FAC ¶ 43.) The

23   conspiracy, Plaintiff alleges, was done "on such a colossal scale" that it "could not have been

24   perpetrated against investors . . . without the intentional participation of" Defendants. (FAC ¶

25   42.)

26       There is no doubt that humans are capable of treacherous acts, as are large corporate

27   institutions. But allegations of such treachery cannot be the basis for a lawsuit without also

28   alleging sufficiently specific factual content.

1  Here, Plaintiff's factual allegations do not establish any more than Defendants being

2  passive financial institutions that were used by the actual wrongdoers to store and transfer

3  money.  Plaintiff tries to mask this by peppering his complaint with buzzwords like

4  "concealment" and "fraudulent."  (*See, e.g.*, FAC ¶¶ 100-01, 106, 138.)  But without more, those

5  words are legal conclusions.

6  Plaintiff argues that the FAC should survive based on reasonable inferences from the

7  facts alleged.  It is not for the Court to gauge the credibility of Plaintiff's allegations at this stage,

8  but the facts do not support the inferences Plaintiff makes.  The closest Plaintiff gets to showing

9  the Defendant did anything wrong are his allegations that Defendants did not catch certain "red

10  flags" that, according to Plaintiff, should have notified Defendants "that the sales they were

11  clearing were likely improper."  (*See, e.g.*, FAC ¶ 149.)  These allegations fall short of being

12  sufficient factual content to suggest with sufficient specificity that Plaintiff is entitled to relief

13  from Defendants.

14  The FAC lacks the required specificity.

15  Further, the FAC's fraud-based claims lack sufficient particularity.  For Plaintiff's claims

16  that sound in fraud, the FAC's allegations must be "accompanied by 'the who, what, when,

17  where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

18  1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  Plaintiff

19  "must set forth more than the neutral facts necessary to identify the transaction. [They] must set

20  forth what is false or misleading about a statement, and why it is false." *Id.* at 1006 (quoting

21  *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).  They must also allege facts

22  permitting a reasonable inference of scienter.  Plaintiff fails to meet this heightened standard.

23  As Plaintiff's FAC is neither plain nor specific, it fails under Rule 8(a).  His fraud-based

24  claims also fail under Rule 9(b).

25

26

27

28

### 2.2     Shotgun Pleading

Related to plausibility and particularity is the concept of shotgun pleading.  Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations. They are unacceptable.  One common theme of Rule 8(a), Rule 9(b), *Iqbal, Twombley*, and federal securities laws on pleading is that plaintiffs must give the defendants a clear statement about what the defendants allegedly did wrong.  The Court has recognized that allowing shotgun pleadings would lead to many negative consequences.  *See Mason v. County of Orange*, 251 F.R.D. 562, 563-64 (C.D. Cal. 2008) (quoting *Anderson v. District Board of Trustees*, 77 F.3d 364, 366-67 (11th Cir. 1996)) ("[E]xperience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) ("Cases framed by shotgun pleadings consume an inordinate amount of a court's time. As a result, justice is delayed, if not denied, for litigants who are standing in the queue waiting to be heard. Their impression of the court's ability to take care of its business can hardly be favorable. As the public becomes aware of the harm suffered by the victims of shotgun pleading, it, too, cannot help but lose respect for the system.").

One common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term "Defendants" throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong.  Another type is where the plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then "each count incorporates every antecedent allegation by reference[.]" *Byrne*, 261 F.3d at 1129.

The Court explained all this in the Order dismissing the original Complaint, yet the FAC shares the same defect with only slight, inadequate improvements.  Like the original Complaint, the FAC alleges in multiple places that "Defendants Wachovia, Morgan Keegan, and [Janney]"

did certain things or "knew or should have known" certain information, without making any specific allegations against Defendants.  True, Plaintiff improved this slightly by adding some allegations addressing particular Defendants, but many of Plaintiff's allegations still exhibit impermissible lumping of Defendants.  And further, each claim incorporates 197 other paragraphs "as if fully set forth [t]herein."  (*See, e.g.*, FAC ¶ 210.)

This shotgun pleading style deprives Defendants of knowing exactly what they are accused of doing wrong.  (*See* Morgan Keegan's Reply at 4 n.5.)  The Court already explained this in its previous Order, and this defect alone warrants dismissal.  *See* Fed. R. Civ. P. 41(b).

### 2.3    Particular Claims

Plaintiff's particular claims also fail for separate reasons.  The Court notes that many of Plaintiff's claims share common substantive defects.  Plaintiff fails to allege that Defendants had any contractual relationship with Plaintiff.  Nor does he allege that Defendants had any actual contact with Plaintiff.  Further, on the face of the FAC, Optech had a contractual right to transfer the collateral.  (FAC ¶ 239.)  And while Plaintiff alleges that Defendants were Plaintiff's subagents, the FAC lacks sufficient factual content to support this conclusory allegation.

#### 2.3.1   The Claim for Breach of Contract

Defendants argue that the breach of contract claim must be dismissed.  The Court agrees.

Plaintiff's breach of contract claim is premised on many things.  Plaintiff alleges that Defendants breached the "Master Loan Financing and Security Agreement ["MLF"] between Optech and [Plaintiff]."  (FAC ¶ 211.)  But Defendants were not parties to the MLF, and had no contract with Plaintiff.  Moreover, the MLF specifically authorized Optech to sell Plaintiff's collateral, so a breach of contract claim may not be based on the sale of that collateral.

Plaintiff also alleges that Defendants breached various duties they purportedly owed Plaintiff.  Plaintiff premises its claim for breach of these duties under the theories that

1  Defendants were Plaintiff's agent or subagent and that Plaintiff was a third party beneficiary to
2  agreements between Optech and Defendants.  These theories fail.

3          Plaintiff's allegations do not establish that Defendants were his agents or subagents.  "A
4  sub-agent, lawfully appointed, represents the principal in like manner with the original agent;
5  and the original agent is not responsible to third persons for the acts of the sub-agent."  Cal. Civ.
6  Code § 2351.  But "[a] mere agent of an agent is not responsible as such to the principal of the
7  latter."  Cal. Civ. Code § 2022.  *See also Malloy v. Fong*, 37 Cal. 2d 356, 372 (1951) (an agency
8  relationship requires "conduct by each party manifesting acceptance of a relationship whereby
9  one of them is to perform work for the other under the latter's direction").

10         Here, Plaintiff's allegations suggest at most that Defendants were mere agents of agents.
11  Thus, Defendants are not liable to Plaintiff.  *See* Cal. Civ. Code § 2022.  For example, as
12  Morgan Keegan says, Plaintiff "alleges no facts sufficient to plausibly suggest that," among
13  other things, Defendants "consented to act as his subagent."  (Morgan Keegan's Reply 12:13-
14  17.)  Or, in Wachovia's words, the FAC "fails to allege that [Defendants] agreed to perform any
15  act at the direction of or on behalf of . . . Plaintiff." (Wachovia's Mot. 16:15-20.)

16         Moreover, principals generally may not recover against subagents for breach of contract.
17  California's law on subagency is partially rooted in the provisions of the Restatement (Second)
18  of Agency, which provides that subagents are not liable to principals for breach of contract.  *See,*
19  *e.g.*, *Streit v. Covington & Crowe*, 82 Cal. App. 4th 441, 446 n.3 (2000) (citing Cal. Civ. Code §
20  1351 and Restatement (Second) of Agency § 428).  The Restatement states, "[u]nless otherwise
21  agreed, a subagent who knows of the existence of the ultimate principal owes him the duties
22  owed by an agent to a principal, *except the duties dependent upon the existence of a contract.*"
23  Restatement (Second) of Agency § 428(1) (emphasis added).  It goes on to state, "[t]he subagent
24  is subject to the same liabilities and has the same defenses as the agent for conduct violating his
25  duties to the principal . . . , *except that he is not subject to a liability for breach of contract.*"  *Id.*
26  § 428, cmt. e. (citation omitted and emphasis added).

27

28

1    Even further, a subagent must "know[] of the existence of the ultimate principal" to be

2    liable to the principal.  Restatement (Second) of Agency § 428(1).  Plaintiff's allegations fail to

3    establish a reasonable inference that Defendants knew of the existence of Plaintiff.

4    Plaintiff, in making his subagency argument, cites mostly conclusory allegations.  The

5    minimal facts alleged against Defendants do not, as Plaintiff argues, "lead to the inference that

6    [Defendants] were" Plaintiff's subagents.  (Opp'n to Wachovia's Mot. 10:18-22.)  Thus,

7    Plaintiff's subagency theory fails.

8    As does Plaintiff's third party beneficiary theory.  Plaintiff contends that he was a third

9    party beneficiary to agreements between Defendants and Optech.  But these agreements do not

10   mention Plaintiff.  (*See* FAC ¶¶ 273-75, Exs. 17-19.)  Indeed, the agreement with JMS

11   specifically states that "no one except [Derivium] has an interest in this account."  (FAC, Ex.

12   18.)

13   In sum, Defendants (1) were not Plaintiff's subagents, (2) had no contract with Plaintiff,

14   and (3) had no third party beneficiary relationship with Plaintiff.  The Court further notes that

15   Plaintiff has grouped multiple claims for Defendants' purported breach of contract despite the

16   Court's admonition in its earlier order that "separate claims . . . should be pleaded separately."

17   (Doc. 74 at 7.)

18   Plaintiff's breach of contract claim fails.

19

20            2.3.2   The Claim for Breach of Fiduciary Duty

21

22   Defendants argue that Plaintiff's claim for breach of fiduciary duty must be dismissed.

23   The Court agrees.

24   To state a claim for breach of fiduciary duty, a plaintiff must establish "the existence of a

25   fiduciary relationship, its breach, and damage proximately caused by that breach."  *Roberts v.*

26   *Lomanto*, 112 Cal. App. 4th 1553, 1562 (2003) (quoting *Pierce v. Lyman*, 1 Cal. App. 4th 1093,

27   1101 (1991)).  Plaintiff fails to meet these elements.  For example, Plaintiff offers no allegations

28   suggesting that a fiduciary relationship existed between Plaintiff and Defendants.  Moreover, the

claim for breach of fiduciary duty sounds in fraud, and thus must meet the particularity requirements of Rule 9(b).  *See Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1058 (N.D. Cal. 1988).  Plaintiff argues that there is an agency relationship between Defendants and Plaintiff, and that agents are automatically fiduciaries.  (Opp'n to Morgan Keegan's Mot. 11:11-25.)  But the Court has rejected Plaintiff's agency theory.  *See* Sec. 2.3.1 *supra*.

Thus, this claim fails.

### 2.3.3   The Claim for Aiding and Abetting Breach of Fiduciary Duty

Defendants argue that Plaintiff's claim for aiding and abetting breach of fiduciary duty must be dismissed.  The Court agrees.

Liability for another's tort, such as aiding and abetting a breach of fiduciary duty, may be imposed if the defendant "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."  *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1144 (2005) (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 846 (1994)).

Here, Plaintiff has alleged no conduct of Defendants amounting to "substantial assistance or encouragement" of the scheme that victimized Plaintiff.  Further, "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted."  *Id.* at 1145 (2005). Plaintiff's allegations are insufficient.

This claim fails.

### 2.3.4   The Claim for Negligence

Defendants argue that Plaintiff's negligence claim must be dismissed.  The Court agrees.

To state a claim for negligence under California law, a "plaintiff must demonstrate that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of his or her injuries." *Morris v. De La Torre*, 36 Cal. 4th 260, 264 (2005). Defendants argue that Plaintiff has failed to establish the duty element.

The FAC advances two theories for why Defendants owed Plaintiff a duty. First, it suggests that Defendants owed him a duty as his subagents. (FAC ¶ 351.) But, as the Court establishes in Section 2.3.1, Defendants are not liable to Plaintiff as his subagents.

Plaintiff's second theory has more potential. Plaintiff asserts that Defendants had a duty to Plaintiff under the rules of the New York Stock Exchange to know their customers, including Optech. (FAC ¶ 355.) The Court finds that this theory cannot save Plaintiff's FAC, which suffers defects of implausibility and shotgun pleading. But, unlike Plaintiff's other claims, the Court finds that Plaintiff's claim for negligence based on stock exchange rules might be cured by amendment. Thus, for reasons discussed in greater detail in Section 3 below, Plaintiff shall have leave to amend this claim.

### 2.3.5   The Claim for Fraud and Conspiracy to Commit Fraud

Defendants argue that Plaintiff's claim for fraud and conspiracy to commit fraud must be dismissed. The Court agrees.

To state a claim for fraud under California law, a plaintiff must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Further, under Rule 9(b), a plaintiff must plead fraud with particularity.

As stated above, Plaintiff fails to plead fraud with the requisite particularity. He further fails to allege facts that allow a reasonable inference of scienter. And he even further fails to identify misrepresentations by Defendant that were intended to and did induce Plaintiff to rely on them. Moreover, the conspiracy to commit fraud claim rests on the conclusory allegation that

1  Defendants "knew" about the Derivium/Optech scheme.  Such allegations, as the Court has

2  made clear, are insufficient.

3       This claim fails.

4

5       2.3.6   The Claim for Aiding and Abetting Fraud

6

7       Defendants argue that Plaintiff's claim for aiding and abetting fraud fails.  The Court

8  agrees.

9       As stated in Section 2.3.3, liability for another's tort may be imposed if the defendant "(a)

10  knows the other's conduct constitutes a breach of duty and gives substantial assistance or

11  encouragement to the other to so act or (b) gives substantial assistance to the other in

12  accomplishing a tortious result and the person's own conduct, separately considered, constitutes

13  a breach of duty to the third person."  *Casey*, 127 Cal. App. 4th at 1144 (2005).  And, as stated,

14  Plaintiff fails to allege "substantial assistance or encouragement" or actual knowledge of the

15  Optech/Derivium scheme.  Further, Plaintiff fails to meet Rule 9(b)'s particularity requirements

16  concerning this claim.

17       This claim fails.

18

19       2.3.7   The Claim for "Violation of Sec. 10(b) and Rule 10b-5"

20

21       Defendants argue that Plaintiff's claim for "Violation of Sec. 10(b) and Rule 10b-5" must

22  be dismissed.  The Court agrees.

23       To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a

24  material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or

25  sale of a security, (4) transaction and loss causation, and (5) economic loss."  *In re Daou Sys.*

26  *Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336,

27  341-42 (2005)); *Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1061 (9th Cir.

28  2008).  Further, a plaintiff must also meet heightened federal pleading standards specific to

1  securities fraud cases.  *See, e.g.*, 15 U.S.C. § 78u-4(b)(2).

2      Like the other fraud claims, Plaintiff fails to plead this claim with sufficient particularity,

3  identify any misrepresentations, or allege facts leading to a sufficient inference of scienter.

4  Further, to the extent Plaintiff's seventh claim seeks to assert claims for violations of other

5  provisions of federal securities laws besides Section 10(b) and Rule 10b-5, it fails.  Plaintiff does

6  not meet the elements or the pleading requirements of any such claims.  For instance, Plaintiff

7  fails to allege Defendants' connection to a securities transaction, and also fails to sufficiently

8  allege that Defendants controlled Derivium.

9      Plaintiff's Claim for "violation of Sec. 10(b) and Rule 10b-5" fails.

10

11      2.3.8   The Claim for Violation of California Corporate Code § 25504

12

13      Defendants argue that Plaintiff's claim for Violation of California Corporate Code §

14  25504 must be dismissed.  The Court agrees.

15      California Corporate Code § 25504 imposes liability on, among other entities, persons

16  who "directly or indirectly" control primary violators of California's security laws or broker-

17  dealers or agents who materially aid a primary violation.  Here, Plaintiff alleges no facts

18  supporting a reasonable inference that Defendants violated Section 25504.

19      This claim fails.

20

21      2.3.9   The Claim for Conversion

22

23      Defendants argue that Plaintiff's claim for conversion must be dismissed.  The Court

24  agrees.

25      To state a claim for conversion under California law, a plaintiff must allege (1)

26  "ownership or right to possession of property," (2) a defendant's wrongful act toward the

27  property, causing interference with the plaintiff's possession; and (3) damage to the plaintiff.

28  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th

384, 394 (2007).  But "bailees acting in good faith on instructions of their customer" are generally not liable for conversion.  *Software Design & Application v. Hoefer & Arnett*, 49 Cal. App. 4th 472 (1996).  "A bailee who receives bailed property from a thief, without notice of the true owner's claim and returns the property to the bailor according to the terms of the bailment, is not liable for conversion."  *Id.* (citing *Steele v. Marsicano*, 102 Cal. 666, 669 (1894)).

Here, Plaintiff does not allege facts sufficient to create a plausible inference that Defendants are liable for conversion.  Indeed, on the face of Plaintiff's FAC, Defendants were merely bailees who received bailed property from a thief.

In his Oppositions, Plaintiff argues that Morgan Keegan and Janney are "liable for conversion because they transferred and sold [Plaintiff's collateral] knowing that they were acting beyond the authority of the MLF[] and knowing that the transaction was part of a fraudulent scheme."  (Opp'n to Morgan Keegan's Mot. 17:14-18; Opp'n to Janney's Mot. 19:10-14.)  Plaintiff also argues that "Wachovia is liable for conversion because they participated in the movement of [Plaintiff's] collateral knowing that they were acting beyond the authority of the MLF[] and knowing that the transaction was part of a fraudulent scheme."  (Opp'n to Wachovia's Mot. 22:15-19.)  But Plaintiff does not sufficiently allege that Defendants knew the transaction was part of a fraudulent scheme.  And further, Plaintiff's own allegations contradict his argument that Defendants transferred, sold, or "participated in the movement of" Plaintiff's collateral.  According to Plaintiff, the terms of the MLF gave Optech "and its . . . agents and . . . assigns the right and power (subject to the terms of this Agreement), without the requirement of notice or consent of [Plaintiff], to assign, transfer, pledge, . . . lend, . . . sell . . . and/or otherwise dispose of some or all of the Collateral" so long as Optech returned the collateral to Plaintiff. (FAC ¶ 239.)

This claim fails.

**3.   WHETHER THE DEFECTS IN PLAINTIFF'S CLAIMS CAN BE CURED BY AMENDMENT**

Defendants argue that Plaintiff should not be granted leave to amend his claims.  The Court agrees concerning each claim except Plaintiff's claim for negligence.

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment.  *Jackson*, 353 F.3d at 758; *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).  In other words, if allowing a party to amend its pleading would be futile, district courts properly decline to grant leave to amend.  *Thinket Ink*, 368 F.3d at 1061 (citing *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)).

Except for the negligence claim, amendment of Plaintiff's claims would be futile.  Plaintiff has already amended his claims, and courts have greater discretion to deny leave to amend in such a situation than when a party has not yet amended his pleading.  *See Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

More importantly, it is clear that the defects in Plaintiff's non-negligence claims cannot be cured by amendment.  For example, Plaintiff fails to identify facts that would change the conclusion that Defendants may not be liable as Plaintiff's subagents.  For further example, in asserting fraud-based claims, Plaintiff fails to identify particular misrepresentations, sufficiently plead scienter, or plead fraud with particularity.  Plaintiff also fails to explain how those defects may be cured.  And for yet further example, Plaintiff fails to show that Defendants (1) knew of the Optech/Derivium scam, (2) controlled, materially aided, substantially assisted, or encouraged the scam, or (3) are more than mere bailees who received bailed property from a thief.

Plaintiff has been given two chances to provide such allegations, and has failed to do so.  Moreover, Plaintiff filed the proposed SAC, which asserts claims for: (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) negligence; (4) aiding and abetting

1    fraud; (5) violation of California Corporate Securities Act; and (6) conversion.  These claims

2    share the defects that permeate the FAC, which buttresses the conclusion that they cannot be

3    cured through amendment.  And Plaintiff's proposed SAC does not even attempt to correct the

4    FAC's defective claims for breach of contract, fraud and conspiracy to commit fraud, and

5    "violation of Sec. 10(b) and Rule 10b-5," which indicates that those claims also cannot be cured.

6        Accordingly, all Plaintiff's claims except his negligence claim are dismissed without

7    leave to amend.

8        But it's a different story with Plaintiff's negligence claim.  Defendants argue that Plaintiff

9    cannot allege sufficient facts that Defendants had and breached a duty to him.  To the extent that

10   Plaintiff's negligence claim is premised on a theory that Defendants were his subagents, the

11   Court agrees.  But the negligence claim is also premised on the alternative theory that

12   Defendants had duties based on various stock exchange rules to, for example, use due diligence

13   to learn the essential facts about its customers, the orders they place, and the cash or margin

14   accounts that they accept or carry.  *See* New York Stock Exchange Rule 405 ("NYSE Rule

15   405") (imposing a duty on member organizations of the New York Stock Exchange to "use due

16   diligence to learn the essential facts relative to every customer, every order, every cash or

17   margin account accepted or carried") (quoted in *Jablon v. Dean Witter & Co.*, 614 F.2d 677,

18   678, n.1 (9th Cir. 1980) and *De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1310 (2d

19   Cir. 2002)).

20       At this point, the Court finds that Plaintiff's negligence claim based on duties reflected in

21   stock exchange rules might possibly be cured through amendment.  True, courts have held that

22   there is not a separate right of action for violation of rules like NYSE Rule 405.  *Zagari v. Dean

23   Witter & Co.*, No. C-74-2007 RFP, Fed. Sec. L. Rep. (CCH) P95,777, 1976 U.S. Dist. LEXIS

24   13032 (N.D. Cal. Sept. 27, 1976); *Mercury Inv. Co. v. A.G. Edwards & Sons*, 295 F. Supp. 1160

25   (S.D. Texas 1969).  But Courts have also stated that rules like NYSE Rule 405 are "part of the

26   negligence concept of common law."  *Zagari*, 1976 U.S. Dist. LEXIS 13032, at *35; *Piper,

27   Jaffray & Hopwood, Inc. v. Ladin*, 399 F. Supp. 292, 299 (S.D. Iowa 1975) ("[T]he Know Your

28   Customer Rule and the Suitability Rule may form part of the negligence concept in common law

17

. . . .").  The Court agrees that "Rule 405 of the NYSE[ and certain other rules] are appropriate indicia of the standard of conduct required of a stock broker in the practice of his profession." *Piper, Jaffray*, 399 F. Supp. at 298; *Zagari*, 1976 U.S. Dist. LEXIS 13032, at *36 (noting that *Mercury Investments* and *Piper, Jaffray* both recognize that, "while a violation of the NASD suitability rule was not itself actionable, it could be used as evidence of negligence").

Based on the facts identified by Plaintiff, Plaintiff might be able to sufficiently allege that Defendants had and breached a duty of conduct informed by rules such as NYSE Rule 405. According to Plaintiff, Optech was a Hong Kong corporation and transactions were made with an Isle of Mann corporation, which should have raised red flags to Defendants.  (SAC ¶¶ 62, 65, 73, 86-87.)  Further, Plaintiff asserts, Defendants were involved with a large volume of Derivium transactions, (SAC ¶¶ 63, 65, 69, 80), and Defendants should have recognized that Derivium was not engaging in hedging transactions as it was supposed to do with the 90% loans, (SAC ¶¶ 63-64, 72, 81-82).  Plaintiff might be able to use these facts to craft a viable negligence claim.

The Court forms no conclusion as to whether Plaintiff's negligence claim as stated in his proposed SAC is sufficient.  Rather, the Court finds only that it is possible that Plaintiff's negligence claim in the FAC can be cured by amendment.

Before concluding, the Court pauses to note that the SAC purports to add Wachovia Bank, N.A. as a Defendant.  "Absent extraordinary and specific facts," banks do "not owe a duty of care to a noncustomer" in their financial transactions.  *Software Design*, 49 Cal. App. 4th at 479.  At oral argument, Plaintiff argued that most Defendants are not banks, and thus Plaintiff does not have to meet the extraordinary circumstances test of *Software Design*.  But this test would apply to Wachovia Bank, N.A. if Plaintiff attempts to assert a negligence claim against it.

The Court also notes that Plaintiff makes unique allegations concerning "Wachovia."  In the SAC, Plaintiff makes allegations that certain individuals working for "Wachovia" knew the terms of Derivium's marketing and agreements.  In one sense, these allegations are made in greater detail than the allegations against Morgan Keegan and Janney because Plaintiff identifies individuals working for "Wachovia" that actually entered into a 90% loan with Derivium, helped

market Derivium's loan program, or edited and commented on the terms of Derivium loans. (SAC ¶¶ 52-59.)  But in another sense, Plaintiff's allegations against "Wachovia" in the proposed SAC are weaker than those against Morgan Keegan and Janney.  Plaintiff impermissibly groups four distinct entities - Wachovia Securities, LLC, Wachovia Securities Financial Network, LLC, Wachovia Bank, N.A., and First Clearing, LLC - as "Wachovia" without distinguishing between them in the pleading.  (SAC ¶ 8.)  Such grouping fails to give the four Wachovia entities notice of the exact claims against them.

In conclusion, Plaintiff shall have leave to amend his negligence claim, but shall not have leave to amend his other claims.


**DISPOSITION**


Plaintiff's Motion is DENIED.  Defendants' Motions are GRANTED with leave to amend the negligence claim but without leave to amend all other claims.  The Court accepts Plaintiff's proposed amendments to the extent they remove the basis for federal jurisdiction, so the case is DISMISSED.



IT IS SO ORDERED.

DATED: June 30, 2010

_____
                Andrew J. Guilford
             United States District Judge